45

**ANDREW C. BAILEY**
2500 N. Page Springs Rd
Cornville, AZ 86325
928 634-4335
*Debtor in Pro Per*



FILED
APR 09 2010



UNITED STATES
BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br>**Andrew C. Bailey**<br>Debtor<br><br>ANDREW C. BAILEY<br>Respondent<br><br>Vs<br><br>WELLS FARGO BANK, NA<br>(WELLS FARGO)<br>Movant | **Chapter 11**<br>**Case #: 2:09-bk-06979-PHX-RTBP**<br><br>**EMERGENCY MOTION FOR DISCOVERY AND FOR STAY PENDING DISCOVERY IN LIGHT OF NEW EVIDENCE, ISSUES OF JURISDICTION, FRAUD AND FRAUD UPON THE COURT**<br><br>(Related to Docket #7 and #152)<br>Subject property:<br>2500 N. Page Springs Rd,<br>Cornville, AZ 86325 |

Debtor moves the court to enter an Emergency Order (The Order) granting discovery and a stay of foreclosure pending discovery and the resolution of ongoing litigation for the following reasons: 1) The Court lacks jurisdiction in the matter because Movant is not a creditor, party-in-interest, or beneficiary or the agent of a creditor, party-in-interest, or beneficiary pursuant to FRCP 17(a) and 19(a), applicable via Rules 9014, 7017 and 7019, and 2) Movant failed to disclose or join indispensable parties in the action, and 3) Movant falsely represented itself as the original lender and as the current beneficiary but claims ignorance and inadvertence as its excuse for the misrepresentation, claims which are impossible, and 4) Movant fraudulently concealed evidence that the subject loan was securitized, and 5) new evidence concerning the securitization of the "loan" and chain-of-title reveals undisclosed parties-in-interest in Debtor's Property. Further, (6) Debtor

– 1 –

continues to dispute the assumption of default, the assumption that he has no equity in the Property and the assumption that no payments have been made. Finally, (7) Movant is not a secured creditor with regard to Debtor's Property. Movant's claim is classified in Debtor's Amended Schedules as unsecured and disputed. Movant has not objected to or disputed the foregoing classification.

No evidence has been admitted in the instant proceeding, and no discovery has been conducted. Thus there is no tested record before the Court. The October 2, 2009 Order was granted and later re-affirmed on the basis of self-admitted misrepresentation by Movant's counsel, upon unsupported and untested documentation, upon accounting assumptions which may or may not be true, before new evidence of un-noticed but necessary and indispensable parties-in-interest was discovered, upon the unsupported presumption that Movant ever had and still has beneficial interest in the Property, and without due consideration of the effects of the securitization of the note and deed of trust on the ownership thereof. Debtor has raised genuine issues of fact. Therefore, in the interests of due process and of justice, the court should grant a stay of foreclosure, allow discovery, and set an evidentiary hearing in the matter.

This Motion is supported by the entire record in this proceeding, the entire record in adversary proceeding 2:09-ap-01731-RTBP, the following Memorandum of Points and Authorities, the Securitization Analysis, the Securities and Exchange Commission link http://www.sec.gov/Archives/edgar/data/1372936/000112528206005786/b414911_ex99-6.txt and Exhibits "A" and "B", and Debtor's Declaration and Supplemental Memorandum and Argument, all of which are incorporated herein by this reference. In support of this motion, Debtor respectfully submits as follows:

**MEMORANDUM OF POINTS AND AUTHORITIES**

1. The securitization of the Debtor's note and deed of trust incident to the note is no longer disputable. Movant has from the start steadfastly and deceptively concealed this fact and the true ownership of the note and deed of trust incident to the note, despite Debtor's assertions, objections and statutory requests. This intentional concealment by Movant resulted in the Court issuing a minute entry mentioning that the loan MAY have been securitized, while granting Movant's motion for relief from the automatic stay. Although the use of the word MAY indicates doubt in the matter, the Court has not investigated further. In fact, there is no doubt in the matter. The loan WAS securitized. Some of the securitization participants have now been identified, as related below.

"It is the creditor's responsibility to keep a borrower and the Court informed as to who owns the note and mortgage and is servicing the loan, not the borrower's or the Court's responsibility to ferret out the truth." *Nosek v Ameriquest* et al (Fed D Mass 2009)(Case 4:08-cv-40095-WGY). Order at 11.

From the very beginning, Movant has not kept the borrower (the Debtor) "informed as to who owns the note and mortgage and is servicing the loan", but the Debtor is at last "ferreting out the truth", a formidable and time-consuming task in the face of Movant's rush to foreclose.

2. The securitization of the Debtor's note in a pool of other mortgages resulted in the issuance of mortgage-backed security certificates traded as securities. Debtor became an unwitting and unregulated party to the issuance of same. Debtor's home, allegedly encumbered by a mortgage and promissory note made with originator Wells Fargo Bank NA identified as nominal mortgagee, is the property at issue in this foreclosure action. The

trust entity Thornburg Mortgage Securities Trust 2006-5 (a Special Purpose Vehicle) became an alleged successor-in-interest to the originator and issued securities collateralized by the mortgage under a master pooling and servicing agreement. On information and belief, neither servicing agent Wells Fargo Bank NA nor Lehman Brothers Bank FSB nor securitization trustee LaSalle National Bank retain any legal or equitable interest in the mortgage. There is no holder in due course.

3. The previously unknown and concealed parties-in-interest revealed in the preliminary securitization analysis include Thornburg Mortgage Home Loans, Structured Asset Mortgage Investments II (SAMI II), Thornburg Mortgage Securities Trust 2006-5 and LaSalle Bank as "trustee", none of whom are joined in the instant action and none of whose identities or roles were ever revealed or disclosed by Movant, despite clear statutory fiduciary duties to do so and despite Debtor's repeated demands, Federal Letters and Interrogatories asking for this information. See *Nosek v Ameriquest, supra.* On the contrary, Movant did and continues to do everything in its power to conceal the very fact that the loan was securitized and that the above-named parties are or may be parties-in-interest with respect to the note and deed of trust. This steadfast and cunning concealment should be investigated by the Court as it indicates a fraudulent and corrupt pattern of conduct on the part of Movant and its attorneys. There can be no assertion on Movant's part that it was unaware of the existence of the above-named parties or of its contractual relationship with those parties, which obviously involved not only the instant Debtor's note but those of hundreds or thousands of other borrowers. The securitization of loans and the creation and sale of derivatives is the extraordinarily profitable business Movant and its partners are engaged in. These multibillion-dollar corporations employ the highest-paid specialist law firms in history. How can they claim ignorance of their own constructions or of the legal

consequences associated with them? Do they really expect the Court to believe them?

4. The requirements to sue to collect a debt upon a promissory note are different from the requirements to foreclose a mortgage securing a debt on a promissory note. The requirements for suing to collect a debt upon a promissory note are defined by Article 3 of the U.C.C. Article 3 governs negotiable instruments, defines what a negotiable instrument is and defines how ownership of those pieces of paper is transferred. For the precise definition, see § 3-104(a) ("an unconditional promise or order to pay a fixed amount of money, with or without interest . . ."). The instrument may be either payable to order or bearer and payable on demand or at a definite time, with or without interest. Ordinary negotiable instruments include notes and drafts (a check is a draft drawn on a bank). See § 3-104(e). Negotiable paper is transferred from the original payor by negotiation. §3-301. "Order paper" must be endorsed; bearer paper need only be delivered. §3-305. However, in either case, for the note to be enforced, the person who asserts the status of the holder must be in possession of the instrument. *See* UCC § 1-201 (20) and comments. The original and subsequent transferees are referred to as holders. Holders who take with no notice of defect or default are called "holders in due course," and take free of many defenses. See §§ 3-305(b). The UCC says that a payment to a party "entitled to enforce the instrument" is sufficient to extinguish the obligation of the person obligated on the instrument. Clearly, then, only a holder – a person in possession of a note endorsed to it or a holder of bearer paper – may seek satisfaction or enforce rights in collateral such as real estate.

5. There has been virtually no serious judicial examination or discussion of who owns the

mortgage promissory notes which collateralize mortgage-backed securities ("MBS"). U.S. Bank, N.A. v. Cook, 2009 WL 35286 (N.D. Ill. January 6, 2009). *Cook* is a very pro lender case. In an order granting a motion for summary judgment, the Court found that Cook had shown no "countervailing evidence to create a genuine issue of fact." *Id.* at 3. However, a review of the evidence submitted by U.S. Bank showed only that it was the alleged trustee of a securitization pool. U.S. Bank relied exclusively on the "pooling and serving agreement" to show that it was the holder of the note. *Id.* The answer to the question "who owns the note?" addresses standing and authority. Foreclosure, as discussed above, can only be instituted by the note holder or an authorized representative. The servicing agent may have standing if acting as an agent for the holder, assuming that the agent can both show agency status and that the principle is the holder. *See, e.g.,* In re Vargas, 396 B.R. 511, 520 (Bankr. C.D. Cal. 2008)).

6. A recent Kansas decision may signal a substantive change regarding this judicial disinclination. In *Landmark National Bank v. Kesler, Supreme Court of Kansas No. 98,489 (Opinion released August 28, 2009)*, MERS and Sovereign Bank sought to overturn lower court rulings that a non-lender is not a "contingency necessary party" (also termed an "indispensable party" in other jurisdictions) in a mortgage foreclosure action, and that due process did not require that a non-lender be allowed to intervene in a mortgage foreclosure action. Although not appealed on the specific ground of MERS' legal authority to assign mortgages and notes, the Supreme Court of Kansas went to painstaking detail to discuss this alleged authority in connection with MERS' claim that it had the right to intervene in and be made a party to the foreclosure action, ultimately finding that MERS had no such authority and thus the lower courts properly denied MERS' and Sovereign's requests.

7. A Federal Court in Nevada similarly attacked MERS' purported "authority", finding that

there was no evidence that MERS was the agent of the note's holder (In Re: *Joshua and Stephanie Mitchell*, Case No. BK-S-07-16226-LBR [U.S. Bankruptcy Court, District of Nevada, Memorandum Opinion of August 19, 2008]. The Court of Common Pleas of Sumter County, South Carolina also found that MERS' rights were not as they were represented to be; that MERS had no rights to collect on any debt because it did not extend any credit; none of the borrowers owe MERS any money; that MERS does not own the promissory notes secured by the mortgages; and that MERS does not acquire any loan or extension of credit secured by a lien on real property. <u>Mortgage Electronic Registration Systems, Inc. v. Girdvainis</u>, Sumter County, South Carolina Court of Common Pleas Case No. 2005-CP-43-0278 (Order dated January 19, 2006, citing to the representations of MERS and court findings in <u>Mortgage Electronic Registration Systems, Inc. v. Nebraska Dept. of Banking and Finance</u>, 270 Neb. 529, 704 NW 2d. 784).

8. The note confers standing to foreclose upon the note holder. The third parties which create the securitization impair and deconstruct the note holder. No party to the securitization is left standing in the shoes of the note holder. The improvised, ad hoc arrangements comprising securitization leave the Debtor with an obligation to pay a creditor which no longer exists. *LaSalle Bank v. Ahearn*, 875 N.Y.S.2d 595 (2009). Dismissed with prejudice. Lack of standing.

9. No real party-in-interest is joined in this action as required by F.R.C.P. Rule 19 and 17(a)(1).) The Court lacks jurisdiction over this matter. Movant is by its own admission, by the process of securitization, by deceptive self-description as the "lender" on the note, and in the absence of any admitted or admissible evidence to the contrary not a real party-in-interest and should be dismissed from the case. "A party lacks standing to invoke the jurisdiction of a court unless he has, in an individual or a representative capacity, some real

interest in the subject matter of the action. *Lebanon Correctional Institution v. Court of Common Pleas* 35 Ohio St.2d 176 (1973). "A party lacks standing to invoke the jurisdiction of a court unless he has, in an individual or a representative capacity, some real interest in the subject matter of an action." And "If plaintiff has offered no evidence that it owned the note and mortgage when the complaint was filed, it would not be entitled to judgment as a matter of law." *Wells Fargo Bank, v. Byrd*, 178 Ohio App.3d 285, 2008-Ohio-4603, 897 N.E.2d 722 (2008).

10. When alleging fraud, certain elements must be asserted and proved. In Arizona, a fraud claim requires proof of nine elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in a manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the truth of the representation; (8) the right to rely on it; and (9) consequent and proximate injury. *Echols v. Beauty Built Homes, Inc., 647 P.2d 629, 631 (1982).* All nine elements will be alleged and proved, if the court so allows. According to expert analysis, Movant Wells Fargo Bank NA was not at any time the true beneficiary under the note, as discussed above and elsewhere in this pleading, and was with certainty not the "current beneficiary" at the times of the two hearings concerning Movant's motion for relief from the automatic stay. Nevertheless, Movant, by and through counsel, repeatedly used misrepresentation to persuade the Court (the hearer) of its standing and consequent right to relief from the automatic stay. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Fed. R. Civ. P. 9(b).* Movant by its own admission, misrepresented itself at the two hearings as the "current beneficiary", the Court relied upon the misrepresentations, resulting in the Court's order lifting the automatic stay and

consequent and proximate injury to the Debtor. This misrepresentation satisfies all of the necessary elements of fraud and constitutes a fraud upon the Court (the hearer) and upon the borrower (the Debtor). The fact is that Wells Fargo NEVER owned the mortgage, having been merely the nominee for the real investor party-in-interest who was not disclosed in violation of TILA. There is no tested evidence that Movant at the time it initiated foreclosure proceedings had any beneficial interest in the promissory note or the deed of trust incidental to the note, or that it still retains any beneficial interest in the promissory note or deed of trust incidental to the note. The matter should be dismissed with prejudice. *Wells Fargo, Litton Loan v. Farmer*, 867 N.Y.S.2d 21 (2008). "Wells Fargo does not own the mortgage loan... Therefore, the... matter is dismissed with prejudice." *Wells Fargo v. Reyes*, 867 N.Y.S.2d 21 (2008). "Dismissed with prejudice, fraud on Court and sanctions. Wells Fargo never owned the Mortgage."

11. Movant claims inadvertence and ignorance as its excuse for its admitted failure and refusal to disclose its real status. This claim is impossible and has no credibility, since Movant's counsel, Tiffany & Bosco, PA is the very same law firm that executed and recorded the two documents naming Lehman Brothers Bank FSB (Lehman) as beneficiary, and which filed them simultaneously on August 18, 2008 at the Yavapai County Recorder's office. (Exhibit A: Notice of Trustee Sale. Exhibit B: Assignment of Deed of Trust). There is no possibility that Movant or Movant's counsel was ignorant of this. The name of Movant's law firm "Tiffany & Bosco, PA" is prominently displayed on the very documents the existence of which they claim to have been unaware. Movants claim fails accordingly.

12. Additionally, on or about Sept 21, 2009 Debtor served Movant's attorney with a certified letter specifically pointing out that all beneficial interest in the transaction was

-9-

transferred by Wells Fargo to Lehman Brothers Bank FSB as recorded at the Yavapai County Recorder's office on August 18, 2008. This notice was served one week prior to the preliminary hearing of September 28, 2009. Debtor also clearly re-stated this fact as the basis for his objections at both hearings in the matter, and had documents in hand to prove his assertion. Movant's counsel nevertheless continued affirmatively to assert that Wells Fargo was still the owner of the note, as recently as January 19, 2010, in the full knowledge that the assertion was false. Movant now admits its failure to disclose its true status due to ignorance of the true facts. This is an impossible, deceptive and fraudulent claim.

13. Movant further asserts that the admitted misprepresentation "is a fact of no consequence." (Exhibit "F" Page 7, Doc #14 Adv case #2:09-ap-01731-RTBP filed 2.2.2010.) If the truth of the matter is indeed "a fact of no consequence", why did Movant go to such lengths to conceal it? Who would lie in Court about something of no consequence?

14. Furthermore, Movant from the very beginning of the loan origination deceptively and misleadingly concealed the fact that the subject note was securitized, and that the Pooling and Servicing Agreement between and among the parties was in place months and years before the "loan closing". TILA requires full disclosure of all parties-in-interest before the closing of any consumer mortgage loan. Movant has steadfastly failed and refused to comply with Federal statutes and discovery and completely failed to disclose any information and evidence associated with the securitization. Such new, relevant and irrefutable evidence, which was one of the main goals of Debtor's QWR and DVL and subsequent adversary action has now been discovered. "Silence can only be equated with fraud where there is a legal or moral duty to speak or when an inquiry left unanswered would be intentionally misleading." *U.S. v. Tweel*, 550 F.2d 297 (1977). There was a clear

legal and moral duty for Movant to speak. Movant's failure to speak made it impossible for the Court or the Debtor to discover, know or understand critical issues and factors concerning the ownership of his property and other matters before the Court.

15. It is indisputable that Debtor's loan was securitized. This is a fact of the greatest significance and importance to the instant case, a fact which Debtor contends will distinguish the instant case from *Reusser vs Wachovia Bank NA*. Reusser is a related case, in which, however, securitization of the Reusser's note was not alleged or involved, and in which the issues at bar were different.

15. Many of the details of the securitization and its effect upon the chain of title to Debtor's property can be accessed by visiting:

http://www.sec.gov/Archives/edgar/data/1372936/000112528206005786/b414911_ex99-6.txt

The foregoing is a very large document and calls for substantial time and expert study to be properly analyzed and understood. Debtor presents his currently limited understanding below:

17. Documents concerning a securities agreement between and among the Movant and a number of other parties including but not limited to Lehman, LaSalle Bank NA, and Thornburg Mortgage Home Loans were executed months and years before Debtor executed the promissory note the subject of this action. The Master Pooling and Servicing Agreement, the Assignment and Assumption Agreement and other supplemental documents are available at the above Internet link, which total approximately 342 pages, each and all of which are incorporated herein by this reference. This information will be analyzed by Debtor's forensic mortgage analysts and integrated into his expert witness declaration,

which has been and is at present limited by the absence of complete and accurate information. Provided below is a brief and extremely superficial summary of the Securitization, some of its recorded and unrecorded chain-of-title consequences, and the identities of some of the hitherto-undisclosed participants in the securitization scheme.

## SECURITIZATION ANALYSIS

18. Please note: The following events all took place after Debtor executed the note. There were numerous arrangements, agreements and contracts executed by the known and unknown parties months and years before Debtor executed the note, which have significant but unknown and untested bearing on the instant case. Discovery in the matter is far from complete, and analysis is in its infancy. Critical and pivotal information and evidence including the precise timing of the below transactions and the consideration which changed hands are currently unknown and unavailable to Debtor.

(i) The 342-page PSA appears to cover everything except the series supplement for Thornburg Mortgage Securities Trust 2006-5 which would document the issuance of the certificates to the investors. The investors are the actual creditors, the real parties-in-interest, who remain unidentified.

(ii) The original "lender" named on the June 9, 2006 mortgage note and deed of trust was Movant Wells Fargo Bank, NA. Wells Fargo did not provide the funding yet is deceptively identified as the "lender". Wells Fargo may have been the "originator" or "loan arranger", but it was not the lender but merely the nominee for an undisclosed principal.

(iii) Wells Fargo Bank NA at some point in time sold, transferred and assigned the note and deed of trust to Lehman Brothers Bank FSB as eventually recorded by the Yavapai County Recorder on August 18, 2008 more than two years after the "closing", and immediately before Lehman filed for bankruptcy protection.

- 12 –

(iv) Lehman Brothers Bank FSB at some point in time sold, transferred and assigned the note and deed of trust to Thornburg Mortgage Home Loans.

(v) Thornburg Mortgage Home Loans at some point in time sold, transferred and assigned the note and deed of trust to Structured Asset Mortgage Investments II (SAMI II).

(vi) Structured Asset Mortgage Investments II (SAMI II) at some point in time sold, transferred and assigned the note and deed of trust to Thornburg Mortgage Securities Trust 2006-5 which issued the certificates to investors.

(vii) LaSalle Bank is the trustee for Thornburg Mortgage Securities Trust 2006-5.

(viii) Separately, Wells Fargo was retained as "mortgage servicer".

(ix) The "residual holder" is SAMI II.

NOTE: Unless Wells Fargo can prove some residual interest in SAMI II, which is unlikely, they are not a beneficiary and have no current beneficial interest. They are solely the mortgage servicer. And Wells Fargo has disclosed no relationship to or authority from the security trustee for Thornburg Mortgage Securities Trust 2006-5, which appears to be La Salle Bank NA.

19. There is no evidence of any recording of the foregoing sales and assignments at the Yavapai County Recorder's Office other than Item (iii) above, nor, obviously, has Movant provided any evidence of any such recording, whether with MERS or with some other in-house recording system. This fact is possible evidence of multiple violations of state and federal statutes, which will be clarified in the discovery process if and when discovery is allowed by the Court. Sales need not be recorded, but any and all assignments must be *(Calif. Code. of Civ. Procedure 2932.5 and relevant Arizona and federal statutes.)*

20. As no discovery has yet been allowed by the Court and as no evidence has yet been admitted or tested through discovery, Debtor asserts that there is no record before the court. Tested record = factual record = evidence. Thus far in these proceedings, the Court seems to have been taking Movant's word for the veracity and authenticity of their assertions and their exhibits. If that is the case, then the Court must accord equal weight to Debtor's declarations, expert declarations, exhibits and other submissions.

21. Certain of Movant's assertions have been tested, proven and admitted to be wrong. Debtor's allegations may be right or wrong, but he asserts his right to examine and object to the other side's evidence, and to submit his own evidence when discovered. To that end, Debtor continues to ask the Court for discovery, an evidentiary hearing, and a ruling that is based on the rules of evidence.

22. Debtor's expert declaration clearly explains that neither Movant nor Lehman were beneficiaries under the deed of trust, nor did they have any beneficial interest in the deed of trust. The proof is in their own pleadings and exhibits and in their own pooling and servicing agreement and other agreements. Further, the deed of trust was assigned AFTER Movant had noticed a trustee's sale on the Property. Why would anyone assign a deed of trust AFTER notice of a trustee's sale on the Property? A deed of trust cannot be assigned without it being recorded and the deed of trust cannot be assigned unless the note is assigned, otherwise there is no encumbrance. The note is the evidence of the obligation and the deed of trust merely incident to the note. Movant has provided no evidence that the note was assigned or that it is enforceable.

23. There are almost certainly breaks and defects in the chain-of-title that cannot be proven

1  one way or the other until discovery has been conducted.

2

3  **BACKGROUND MATERIAL FACTS**

4

5  24. On June 9, 2006 a promissory note and a deed of trust incident to that note were

6  executed by Debtor secured by the subject property. Debtor had no idea or suspicion and

7  was not informed that the documents he signed were subject to pre-existing agreements

8  with other parties of whom he had never heard. There was no possible way Debtor could

9  have suspected, known or discovered that his "loan" was securitized and that he was in fact

10  borrowing money from and signing contracts with unknown and carefully concealed

11  parties. This non-disclosure and concealment clearly violated the Truth In Lending Act and

12  constitutes fraud from the very beginning. "It is the creditor's responsibility to keep a

13  borrower and the Court informed as to who owns the note and mortgage and is servicing the

14  loan, not the borrower's or the Court's responsibility to ferret out the truth." *Nosek v*

15  *Ameriquest* et al (Fed D Mass 2009)(Case 4:08-cv-40095-WGY). Order at 11.

16  25. The "closing" documents including the promissory note and the deed of trust incident to

17  the note were evidence of a purported contract between Debtor and Movant, and yet no

18  meeting of the minds took place between the signatories. A true meeting of the minds is a

19  threshold requirement in contract law. Debtor had one set of assumptions that involved his

20  dream of home ownership, while Movant had an entirely different and secret set of

21  assumptions concerning the profits it and its undisclosed partners and associates would

22  make from the undisclosed and unauthorized sale and use of Debtor's signature. The

23  contract purportedly evidenced by the documents is therefore null and void.

24

25  26. On August 18, 2008 two documents were simultaneously filed at Yavapai County

Recorder's Office by Movant's law firm Tiffany & Bosco, PA; a "Notice of Trustee Sale" naming Lehman Brothers Bank FSB (Lehman) as alleged beneficiary, and an "Assignment of Deed of Trust" transferring all beneficial interest in the transaction from Wells Fargo to Lehman. If Movant transferred the deed of trust to Lehman after it noticed the trustee sale, Debtor has the right to ask whether the purported assignment was an assignment of convenience and whether either of the parties had authority to act as beneficiary. Debtor contends that pursuant to the foregoing, they had no such authority.

27. On information and belief there is no evidence or even hearsay to suggest that Wells Fargo ever re-acquired title to the property or any interest in the property in any way, shape or form.

28. On September 21, 2009, Debtor served on Movant's counsel a certified letter specifically stating that the record showed Lehman to be the beneficiary, not Wells Fargo, as of August 18, 2008. Lehman declared bankruptcy on September 15th, 2008, a fact with relevance to the instant proceedings.

29. At the September 28, 2009 Preliminary Hearing one week later, Movant falsely and deceptively represented itself as the current beneficiary, despite the foregoing notification and documentation and despite Debtor's oral protests and objections. Debtor had evidentiary documents in hand at the hearing that would have disproved Movant's assertion had he been allowed to produce them. The Court had informed Debtor that no evidence would be admitted or considered, as indeed it was not.

30. It is not disputable that Movant's counsel, Tiffany & Bosco, PA is the very same law firm that executed the two documents and which filed them on or about August 18, 2008 at the Yavapai County Recorder's office. (Exhibit A: Notice of Trustee Sale. Exhibit B: Assignment of Deed of Trust). Tiffany & Bosco, PA cannot claim to be unaware of documents they themselves drafted and recorded. The name "Tiffany & Bosco, PA" is prominently displayed on each document. On the basis of that false, deceptive, misleading and fraudulent representation the Court found itself obliged to grant Movant the requested relief at the September 28, 2009 Preliminary Hearing.

31. At the September 28, 2009 Preliminary Hearing, Debtor, acting in pro per, was under the impression that a preliminary hearing was indeed a preliminary hearing as that term would commonly be understood. He had been informed by the court that documentary evidence would not be required or admitted until later. He was dismayed to hear the court grant Movant's motion for relief in the absence of a final hearing in the matter, and despite the issues of fact concerning Movant's standing that he had raised.

32. On October 2, 2009 the Court entered an Order granting Movant relief from the automatic stay. The Order, which on information and belief was drafted by Movant's counsel, falsely, deceptively and misleadingly declares "Wells Fargo Bank NA is the current beneficiary" contrary to the documented facts certainly known at the time to Movant and Movant's attorney. This deception and the consequent Order are to the extreme detriment of Debtor and his creditors and to the unjust benefit, advantage and enrichment of Movant Wells Fargo and its partners.

33. On December 23, 2009 Debtor filed Adversary Complaint # 2:09-ap-01731-RTBP asking the Court to enforce the statutory duties, terms and default provisions of the RESPA/TILA QWR and DVL and to allow other discovery. The Complaint asks for a Temporary Restraining Order while discovery is conducted, in view of the imminent and improper trustee sale of Debtor's property. Debtor intends to seek the Court's leave to modify the adversary action in light of the new evidence and ongoing clarification as to his causes of action.

34. The QWR and DVL was served via Movant's counsel of record by certified mail on September 21, 2009 with a cover letter to the attorneys requesting that it be forwarded to their client for immediate attention. Service was made via Tiffany & Bosco, PA in the reasonable belief that this was the most efficient way to move the case forward, and in the absence of a specific person and address at Wells Fargo. Service was made via Tiffany & Bosco, PA, not on them. If Tiffany & Bosco, PA were not the correct conduit to their client, they should have notified Debtor of that fact.

35. Notwithstanding the above, or about November 7, 2009 Movant Wells Fargo did make a partial but insufficient response to Debtor's QWR and DVL affirmatively confirming service and receipt of the QWR and DVL and acknowledging their statutory duty to respond. Movant now denies these well-documented facts. Debtor is in possession of Wells Fargo's response in its original mailing envelope. Debtor has a witness, his retreat center's manager Dr. Julia French, who received and processed the response, and reported the contents to Debtor. Interestingly, the response was mis-addressed to Debtor at 3500 N Page Springs Rd, Cornville, AZ 86325. The correct address is 2500 N. Springs Rd, Cornville, AZ

86325. Debtor's mail carrier noticed the error and delivered the documents despite the incorrect address.

36. At the subsequent January 19th 2010 hearings (Docket # 74 & 101), Movant's counsel for the second time falsely and knowingly misrepresented Wells Fargo as the current beneficiary. In plain language, Movant's counsel lied when asked by the court whether or not Wells Fargo was still the owner of the note. It is uncontestable that Movant and Movant's counsel at that time knew full well that Wells Fargo was not the owner of the note, yet Mr. McDonald answered affirmatively.

37. The foregoing is clear in the January 19th 2010 courtroom transcript:

Judge Baum: "Are you representing to the Court that Wells Fargo still owns this note?"

Leonard McDonald: "They do, your honor."

Debtor submits that this is clear evidence of fraud upon the Court, and asks: if this deception is indeed "a fact of no consequence" as alleged, why did Movant go to such extraordinary lengths to conceal it? Why lie about something of no consequence?

Debtor submits that something deeper is going on here. If the Court were to "look under the hood" Debtor believes some very interesting facts would emerge. The tip of the iceberg is now visible as discussed in the preliminary Securitization Analysis above. Movant meanwhile seems to be doing everything in its power to avoid discovery and an evidentiary hearing. Why, if it is innocent of any wrongdoing?

38. In Wells Fargo's subsequent Motion to Dismiss the Amended Complaint, Movant's counsel admits to "inadvertently" failing to inform the Court at the two previous hearings of

Movant's actual role in the loan transaction: "loan servicer", not "current beneficiary" as previously and repeatedly asserted. Movant goes on to assert that the failure "is a fact of no consequence." (Exhibit "F" Page 7, Doc #14 Adv case # 2:09-ap-01731-RTBP filed 2.2.2010.)

39. On February 26, 2010, notwithstanding the foregoing, the Court granted Movant's Motion for Relief from the Automatic Stay and re-affirmed the October 2, 2009 Order.

**ARGUMENT**

40. Movant obtained the Order and the re-affirmation of the Order by false, deceptive and fraudulent misrepresentation and by intentional concealment of evidence and intentional concealment of the existence of undisclosed, un-noticed and un-joined parties-in-interest, whose existence was well known at the time and has always been well known to Movant.

41. Debtor disputes the untested assumption of default, the assumption that he has no equity in the property and the assumption that no payments have been made other than those made by him. Debtor has been told by experts and has asserted in his expert declaration that it is "much more likely than not" that the securitization of his note and deed of trust resulted in the satisfaction in whole or in part of his obligation. If the obligation has been paid, offset, or reduced by third party payments, Debtor may very well have equity in the property. Debtor has a right to know whether this is true or not. Debtor maintains that until and unless a full accounting has been provided and analyzed, it is impossible for him or for the Court to know with certainty the status of his account and therefore whether or not he has any equity.

42. Debtor's Schedules were filed at a time very early in his Chapter 11 bankruptcy when Debtor was ignorant of facts and possibilities subsequently raised. But the Schedules were subsequently amended. It should be noted that Movant and known counterparties including Lehman are listed in Debtor's Amended Schedules as Unsecured and Disputed. Unknown parties described as "DOES" are similarly listed. The "DOES" include the securitization partners named above. Neither Movant nor Lehman nor any other party has objected to the foregoing thereby accepting and allowing that they are not secured creditors.

43. Neither Movant nor Lehman nor any other party has proved that their claim is secured by Debtor's property.

44. On the subject of adequate protection, Debtor disputes Movant's claims and submits that, if it be proven that Movant benefitted from its participation in the transaction and never advanced any money, and is not a beneficiary, as Debtor is informed and believes to be the case, the question of adequate protection is moot. Movant risked nothing and there is nothing to protect.

45. Finally, Debtor is told by experts that aside from the fraudulent misrepresentations asserted above, there exist further statutory and other violations and fraud associated with the origination and securitization of the 'loan". Again, this can only be determined with certainty once discovery has been conducted, all the parties have been disclosed and identified, their mutual rights and responsibilities clarified, their actions understood, and a full accounting provided and analyzed.

**DEBTOR'S DECLARATION AND SUPPLEMENTAL MEMORANDUM AND ARGUMENT IN SUPPORT OF EMERGENCY MOTION FOR STAY PENDING DISCOVERY**

There is an absence of clarity regarding real party-in-interest here. Additional indispensable parties are not joined in the instant action. The court has thus far taken at face value Movant's untested exhibits and admitted misrepresentations that they are the "current beneficiary" and has accordingly ruled in their favor. A case has been cited (*Reusser vs Wachovia Bank NA*) which upon close reading does not address the central issue of a securitized loan and is thereby distinguished from the instant case. This case concerns a loan which was securitized. There appears to be a case for fraud upon the Debtor and fraud upon the court.

The situation is not as straightforward as it might be in the case of a traditional non-securitized transaction. This case involves a securitized loan. The very process of securitization means the nominal "lender" (Wells Fargo Bank NA in this instance) was never the beneficiary or lender and that the note is separated from the deed of trust making the obligation an unsecured debt and a legal nullity. According to Debtor's expert witness, who is a respected securitization specialist, former Wall Street banker and trial attorney:

"They never were the real beneficiary. In all securitized loans the named beneficiary is the nominal beneficiary - i.e., in name only. It means the Deed of Trust is void or voidable, but subject to reformation in court, which means they must file a lawsuit to reform the mortgage to comply with the real terms." *Expert Declaration of Neil F. Garfield MBA JD.*

Debtor OBJECTS to Movant's declarations that they are the "current beneficiary" or the

"creditor" or have any residual interest whatsoever, and denies the existence of Movant's claims to "its security interests." Debtor denies ALL of the allegations made by Movant unless specifically admitted here. Debtor admits to signing an alleged promissory note and a purported deed of trust for purposes of re-financing his home.

No evidence of ownership has been provided other than copies of certain documents submitted as exhibits but not admitted as evidence. The Movant's exhibits are not true, certified copies of the original document in its current state.

The subject note is no longer negotiable. The Movant is not a holder in due course or an agent for a holder in due course. Further, the Movant and counterparties are listed in the Amended Schedules of the Debtor as unsecured and disputed and the parties have provided no objection.

The underlying note has been rendered unsecured by a number of factors, including but not limited to the consequences of the pre-existing securitization scheme that had immediate effect upon execution of the note. The ultimate defense of the underlying subject unsecured debt is that of payment of the originating investor real party-in-interest by a third party, and discharge of the obligation. On information and belief, the originating investor has been fully or partially paid what was owed it for the funds loaned, not by a party purchasing the ownership of Debtor's obligation, but by third party sources, which has the effect of fully or partially discharging Debtor's obligation. Examples of these third party sources are credit default swaps and other forms of insurance, cross-collateralization, over-collateralization, reserves, and bailouts from the Federal Reserve and U.S. Dept. of Treasury.

1  Movant is falsely and misleadingly identified on the note and incident deed of trust as

2  "lender" in place of the originating investor real party-in-interest. Movant has failed to

3  prove that it is the real party-in-interest or the agent for the real party-in-interest. The only

4  real party-in-interest is the original investor that supplied the funds that were advanced in

5  exchange for the instrument (the note). Movant is not the original investor, and is not the

6  real party-in-interest. Only after the precise identity of the real party-in-interest has been

7  proven can Movant then prove that it has actual, full and complete authority to act on behalf

8  of the real party-in-interest, which is something that it must prove. If it cannot prove this,

9  then the real party-in-interest must be joined as a party. If Movant can prove that it has this

10  authority, then it must prove that the instrument is negotiable. Then it must prove that the

11  real party-in-interest is a holder in due course. Then it must prove the extent to which the

12  Debtor's obligation has not been discharged.

13

14  The vast majority of notes and deeds of trust entered into between the years 2001 and 2008

15  were securitized. This is true regardless of whether the note and deed of trust recognize this

16  fact or not. There is no longer any dispute that the subject transaction was securitized. To

17  the extent that the obligation has not been discharged, Movant must prove that the

18  obligation remains secured by Debtor's residence.

19

20  For the foregoing and other reasons, Movant has not proved its standing to enforce the note,

21  and there has been a failure to join indispensable parties. Debtor demands strict proof that:

22  all endorsements were made to the proper entities; all endorsements were properly executed

23  and properly recorded at the appropriate time by the appropriate parties and not made

24  subsequently in order to clean up the facial appearance of the documents; that Movant is the

25  real party-in-interest and has the right to enforce the note for its own benefit, or that it does

1    so with full and complete authority to act on behalf of the real party-in-interest.

2

3    The issue of full and complete authority is complicated in cases when the obligation is part

4    of a mortgage-backed security (MBS) as in this case. For any party acting on behalf of an

5    MBS Trust their powers must be spelled out within the terms of the Pooling and Service

6    Agreement (PSA) for that Trust. PSAs typically grant only limited powers to MBS

7    Trustees. They do not grant them the power to stand in the shoes of the real party-in-interest

8    unless there is a special document signed by at least a certain percentage of the MBS

9    certificate holders granting the Trustee special powers pertaining to specific claims and

10   litigation. Full authority to act on behalf of the Trust must include the authority to enter into

11   compromise settlements in litigation. Furthermore, the authority must be in accordance with

12   the terms of the Bond Indenture of the mortgage bond, held by the real party-in-interest,

13   received by the investor that funded the loan when the MBS certificate was purchased, that

14   spells out the terms of the agreement between the Bond Issuer and the Bondholders.

15

16   Only the investor has the right to enforce the note. Movant does not have standing to bring a

17   foreclosure action and the real party-in-interest must be joined in this proceeding before a

18   motion for relief from stay can be entertained by the Court. *In re Kang Jin Hwang* 396 B.R.

19   757 (Bankr.C.D.Cal.2008); *In re Vargas*, 396 B.R. 511 (Bankr.C.D.Cal., 2008). The right to

20   enforce a note on the noteholder's behalf does not convert the noteholder's agent into a real

21   party-in-interest. *Id.* at 396 B.R. at 767, quoting 6A Wright, Miller & Kane, *Federal*

22   *Practice and Procedure: Civil 2d* § 1553; *In re Jacobson*, 402 B.R. 359, 366 (Bankr.

23   W.D.Wash., 2009). The holder of the note and not the servicer or the collecting agent, must

24   be the moving party, and the party to whom relief is granted, and must be so named in the

25   pleadings. *Id; Kang Jin Hwang, supra; Vargas, supra.*

Pursuant to FRCP 17(a) and 19(a), applicable via Rules 9014, 7017 and 7019, the real party-in-interest is the only party that can proceed in this action on behalf of the beneficiary of the note in question and their joinder is required. A federal court's jurisdiction is dependent upon the standing of the litigant, which includes both constitutional standing and prudential standing. *Valley Forge Christian Coll. v. Am. United for Separation of Church and State*, 454 U.S. 464, 472 (1982); *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Constitutional standing under Article III requires, at a minimum, that a party must have suffered some actual or threatened injury as a result of the defendant's conduct, that the injury be traced to the challenged action, and that it is likely to be redressed by a favorable decision. *Id; United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 551 (1996); *Jacobson, supra* at p. 11. Constitutional standing is a requirement of Article III of the Constitution, is a threshold jurisdictional requirement, and cannot be waived. *Pershing Park Villas Homeowners Ass'n v. United Pacific Ins. Co.*, 219 F.3d 895, 899-900 (9th Cir. 2000); *Jacobson, supra* at p. 12.

A litigant must also have "prudential standing," which stems from rules of practice limiting the exercise of federal jurisdiction to further considerations such as orderly management of the judicial system. *Pershing Park*, 219 F.3d at 899-900; *In re Godon*, 275 B.R. 555, 564-565 (Bankr. E.D. Cal. 2002) *(citing Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541-42 (1986). *Id.* Prudential standing requires that a plaintiff must assert "his own legal interests as the real party in interest," *Dunmore v. United States*, 358 F.3d 1107, 1112 (9 Cir. 2004), as found in FED. R. CIV. P. 17, which provides "[a]n action must be prosecuted in the name of the real party in interest. Furthermore, Fed. R. Civ. P. 19 requires mandatory joinder of every person with an interest in the note, if not doing so could lead to inconsistent

results in different proceedings affecting the same subject matter. *Kang Jin Hwang, supra* at 7. Foreclosure agents and servicers must prove they have authority to act for a party that has standing. *In re Scott*, 376 B.R. 285 290 (Bankr. D. Idaho 2007); *Kang Jin Hwang*, 396 B.R. at 767; *Jacobson, supra* at 12.

A nominee or agent must show that it has actual authority from the true party-in-interest to act on its behalf and it cannot be assumed that it continues to have such authority even if granted it in the original deed of trust. See *In re Mitchell*, Memorandum Opinion, p.8, BK-S-07-16226-LBR, (Bky. D.NV. 2008). *Mitchell* was designated as the lead case for Motions to Lift Stay filed by MERS in 28 cases, listed by case number therein, in which an order for joint briefing was issued because the issues were substantially the same. Prior to oral argument MERS attempted to withdraw all but 4 of the motions. The mere fact that a party, such as MERS, is named as the beneficiary in a deed of trust is insufficient to enforce the obligation. It must truly be the beneficiary or join the true beneficiary in the action. Many documents contain statements that admit that MERS or the servicer is not the true beneficiary. They also contain contradictory statements stating that they are the beneficiary in one place and that it is only the nominee in another. It is not presently known whether or not MERS or some other in-house recording system is involved in the instant case.

An entity named as the beneficiary on a deed of trust or who has been assigned the deed of trust may not enforce it if not the holder of the note. If a note has been securitized into a pooling trust, the trustee may enforce the note. "If a loan has been securitized, the real party in interest is the trustee of the securitization trust, not the servicing agent. See *LaSalle Bank N.A. v. Nomura Asset Capital Corp.*, 180 F.Supp.2d 465, 469-71(S.D.N.Y.2001) (" *LaSalle-Nomura* "); accord, *LaSalle Bank N.A. v. Lehman Bros. Holdings, Inc.*, 237 F.Supp.2d 618,

631-34 (D.Md.2002) ("*LaSalle-Lehman*"). *Kang Jin Hwang, supra* at 766. But as stated the Trustee is the real party in interest if and only if the PSA and the Bond Indenture grant it that status and do not take away that status in another section of the document, or if they have an authorization signed by at least the percentage of certificate holders as the PSA requires.

Additionally, if a power of attorney is presented to the Court and it refers to pooling and servicing agreements, the Court needs a properly offered and complete copy of the pooling and servicing agreements, to determine if the servicing agent may proceed on behalf of plaintiff. (*EMC Mortg. Corp. v. Batista*, 15 Misc.3d 1143(A) [Sup Ct, Kings County 2007]; *Deutsche Bank Nat. Trust Co. v. Lewis*, 14 Misc.3d 1201(A) [Sup Ct, Suffolk County 2006]). *HSBC Bank USA, N.A. v Valentin*, 1/30/2008, 18 Misc 3d 1123(A), 2008 NYSlipOp 50164(U), ¶ 3.

As the facts regarding these transactions come to light, a true copy of the Pooling and Servicing Agreements is necessary, as is the document, if separate, that sets forth the terms of the powers of the Trustee to the pool, because even the Trustee may not have the power to act on behalf of the Trust, let alone the servicing agent for the Trustee. The Bond Indenture must also be produced to prove actual authority to act on behalf of the Trust and the Certificate (Bond) Holders. This is because the PSA is a contract between the "lender" named in the Deed of Trust, (which wasn't really the lender but played the role of straw man for the undisclosed lender), the "Master Servicer" and the "Trust." However this contract does not include the investor (certificate holder), who is the real party-in-interest and the only party entitled to enforce the note, and accordingly the only party with the power to grant authority to act on its behalf.

It is the practice in bankruptcy court not to insist on strict application of the Rules of Evidence, in the interest of the efficient and inexpensive administration of justice. However, the MBS system is proving to be one giant fraud, and there have been many recent instances that brought the veracity and authenticity of documents in mortgage foreclosure cases into doubt. There are almost always gaping holes in proof of the history of ownership and assignment of the notes and the proofs of their chain-of-custody that have be filled to fairly prove the identity of the real party-in-interest and its connection to the party seeking to act on its behalf.

There must be compliance with the Rules of Evidence, such as those for competency of witness, personal knowledge, hearsay and authenticity, not to mention matters such as veracity and relevance of factual assertions contained in documents, and sufficiency of proof. Many of the cases cited herein strictly enforced the evidentiary rules in these cases, because various facts in the cases placed the veracity of the documentary evidence in doubt. For example, *In re Mitchell*, supra at 13-14; *In re Vargas*, 396 B.R. 511, 517 (Bankr. C.D. Cal. 2008). At a minimum, there must be an unambiguous representation or declaration setting forth the servicer's authority from the present holder of the note to collect on the note and enforce the deed of trust. If questioned, the servicer must be able to produce and authenticate that authority. *Jacobson at 18*.

Even these requirements are insufficient. It is also necessary to produce proof that the original funding came from the MBS Pool Trust that is seeking to enforce the note, plus proof that the Debtor's loan actually is in that specific pool, as well as proof of the identity of the specific persons or entities that invested the funds that were loaned to Debtor, and a copy of the bond indenture specific to the loan being sought to be enforced.

*Nosek v Ameriquest* et al (Fed D Mass 2009)(Case 4:08-cv-40095-WGY), supra, is a precedent-setting District Court decision from a Bankruptcy Court adversary proceeding. *Nosek*, a case that also involves the instant Movant Wells Fargo Bank NA, questions extremely serious matters to which every mortgage company, servicer, trustee to a pool, and all attorneys involved ought to pay close attention. Up to the present time, mortgage companies and servicers have bluffed their way through proofs of claim, motions for relief from stay and on to foreclosure, misleading the Court as to their true role in the matter and without identifying for the Court the real party-in-interest. The mortgage entities (Ameriquest, Wells Fargo et al) seeking to enforce a note and deed of trust and their attorneys were sanctioned severely in *Nosek* for failing to investigate and reveal to the Court the real nature of the mortgage company's interest in the note, and the absence of their real authority to enforce them.

Understandably perhaps, attorneys and courts involved in enforcing mortgages in the past have not been fully aware of the true nature of the complex facts pertaining to the securitized loans they have enforced. The nature of the transactions are no longer apparent by mere review of the notes, deeds of trust and payment accountings. The rules have changed, and traditional assumptions no longer apply. Ignorance or pretence of ignorance is no longer excusable. *Nosek v Ameriquest et al, Id,* indicates that a higher standard of investigation and disclosure to the Court is required. The fact is that the nature and legal consequences of these transactions is no longer a mystery, and is becoming increasingly known to all. Many of the decisions which support borrower's concerns such as legal standing, real party-in-interest, and chain of title defenses have emanated from the Bankruptcy Courts, including two very recent decisions from the Bankruptcy Court for the District of Idaho and one from the Bankruptcy Court for the District of Nevada.

Movant must produce the original note. Expert testimony holds that 40% of the original notes in securitized trusts have been lost, destroyed or intentionally destroyed and some legal commentators have made estimates as high as 60%. The reason for the intentional destruction of notes was presumably to hide proof of fraud from the investors and to hide from the borrower the identity of the holder of the note, for fear of liability pursuant to a plethora of causes of action. There have been a large number of false documents recently presented in the courts, including notes that had fabricated endorsements. The original note must be produced complete with original endorsements, and all must have been made by the proper party.

During the process of securitization and its aftermath, there were a number of routine practices that had the effect of rendering the mortgage loans unsecured as a matter of law. One such practice was to separate ownership of the note from the deed of trust, where the security interest specifically follows the beneficial ownership of the note. When the note is split from the deed of trust, the note becomes, as a practical matter, unsecured. A person holding only a note lacks the power to foreclose because it lacks the security, and a person holding only a deed of trust suffers no default because only the holder of the note is entitled to payment on it.

"Where the mortgagee has 'transferred' only the mortgage, the transaction is a nullity and his 'assignee,' having received no interest in the underlying debt or obligation, has a worthless piece of paper." *Richard R. Powell, Powell On Real Property, § 37.27[2] (2000). In re Mitchell, supra at 8.* Another factor that has rendered mortgage loans unsecured as a matter of law is when there has been a separation of legal title to the note and equitable ownership of the note, in cases where the note has been satisfied in favor of

the equitable owner of the note by a third party that is not the holder of legal title to the note. Because of the universality of such events during the securitization years, Movant must prove the degree to which the obligation of the Debtor to the real party- in-interest has been discharged. This is because in the MBS situation, there is little if any connection between the servicer's accounting of mortgage payments and the degree to which the obligation of the Debtor to the real party-in-interest has been discharged. In most cases the obligation to the investor or real party-in-interest has been paid off by a third-party source, such as a credit default swap obligee, other insurance, bail out funds, or a cross-collateralization source.

The "lender" so named in the note and in the Deed of Trust, Wells Fargo Bank, NA, as in all cases of MBS, never provided funding for the loan, but merely arranged and/or participated financially in the loan transaction. The process by which the MBS were created was the sale of an interest in the income stream of payments on residential mortgages. Typically, these mortgages did not yet exist at the time the securities were purchased. Because of the way the securities were packaged and sold, huge pools of money were created such that there was great pressure on all participants in the process to find people to borrow money and sign their name to notes and deeds of trust. This lead to laxity of lending standards, huge commissions for all concerned, and pressure on borrowers to take on loans they could never realistically be expected to pay back.

**Terminology**

An Originator is a person or company that arranges and finishes a mortgage transaction by helping the borrower complete all the necessary steps. A mortgage Originator could be a mortgage broker or mortgage banker, represents the original mortgage lender, and receives

commissions or fees for its participation. The Sponsor is a Bank, Investment Bank, or Mortgage Company, and acts as a financial conduit between the funding source and the Closing Agent, which is an Escrow or Title Company. The Sponsors have access to a "warehouse line of credit" from a Bank, Investment Bank, or other Financial Institution, called the Depositor, that obtained the funds from the prior and ongoing sale of the MBS certificates. Depositors hold the funds from the sale of MBS certificates, some of which is used to supply funds for mortgage loans paid through the aforementioned process, and to obtain the notes executed by the Borrowers. The Issuer is a Bank, Investment Bank or other financial institution that sets up the MBS and issues the certificates. The Underwriter works with the Issuing Bank to set up the MBS, set up the various tranches, and make risk determinations of the various tranches. The Investor in the MBS situation must be a "Qualified Investor," which means that it satisfies legal criteria based on a level of sophistication in knowledge and experience in the securities markets, examples of which are fund managers, hedge fund managers, pension fund managers, high net worth individuals, corporations, government agencies and other money management fund managers. Servicers are financial institutions that administer and provide the mortgage payment collection activities and are supposed to pass through the stream of income in accordance with the terms of the PSA and the Servicing Agreements. The only real parties to the MBS transaction are the borrowers and the investors. The other participants are conduits and intermediaries. The investor is the only party that purchased the note for value. None of the other intermediaries paid anything of value, rather all of them were paid value in exchange for "services."

Numerous reports explain how certain powerful individuals on Wall Street systematically engaged in the greatest scheme of fraud in history. The complexity of the derivatives they

created and the complex personnel and entity structure involved in their creation and valuation created a level of plausible deniability beyond the reach and comprehension of the regulatory agencies and even of very sophisticated bankers and investors. If this were not so it would not have led the world economy to the brink of collapse. At the heart of the "complexity" was the use of computer algorithms that took spreadsheet projections to levels of "sophistication" never seen before. The result was that when a computer generated a "value" for mortgage backed securities, it was impossible to audit by hand. So Wall Street created something that was treated as the equivalent of money. The value of this money was whatever Wall Street said it was. Expert testimony reveals that a huge portion of the invested funds was secreted away offshore and otherwise distributed to individual bankers and investment bankers. Every participant in the chain received consideration beyond that which they would normally have received in traditional mortgage loan transactions, largely but not entirely, due to the extremely heavy volume, starting with mortgage brokers and appraisers, all the way through "lenders," which were not really lenders, intermediate selling banks, sponsoring investment banks, underwriters, rating agencies, fund managers, subservicers, servicers, master servicers, pool administrators, and top level pool tranche bondholders.

At the later stages, only the intermediaries were making money. These intermediaries continue to reap the benefit of payments made and proceeds of foreclosures, even though they never invested or risked so much as a dime in loan funding. The Wall Street firms, whose stocks were traded publicly, had no risk whatsoever. They were capitalized by investors in their stock and investors in their financial products at a time when everyone was searching for higher returns and greater safety, which is the basis upon which these fraudulent products were sold. Certain Wall Street firms and certain individuals in those

firms made inconceivably great profits, which were in fact the proceeds of fraud and theft.

The way the loans were sold to borrowers turned the borrowers including the Debtor into unwitting issuers of unregulated securities, in violation of the Truth in Lending Act, and in violation of the Securities Exchange Act of 1933 and 1934. Borrowers, including Debtor, were advised and convinced that the value of their properties would continue to rise and that they could simply refinance when no longer able to afford to make the payments. They were advised that the ability to refinance was assured because continued increase of property values was a certainty. Therefore, they were sold the promise of a passive return on investment. It was normally the case that the mortgage- backed securities were sold to investors before the loans were made, before the notes and deeds of trust were executed and even before it was even known who the borrowers would be. They were further sold as backed by AAA ratings and insurance guarantees in the form of credit default swaps and private mortgage insurance. Though the notes began as negotiable instruments they were really unregulated securities issued by unregulated entities. This was the original design and intention and was and is fraudulent to the core.

When all the complexity and confusion is seen through, the only real parties to a mortgage loan transaction are the investor (the real source of the money that funded the loan) and the borrower (or "unwitting issuer of unregulated securities"). All other intermediary participants in the securitization process were superfluous entities without any value of their own placed at risk. Despite the computer-driven valuations that were produced, the real value was zero and less than zero for both investors and borrowers. Borrowers were persuaded and pressured into loans that were doomed to fail from the start, and were left with properties whose real market value was a fraction of the amount that they owed.

The actual investors are the only parties that have any real standing to make a claim on a note or deed of trust, because they are the only parties that provided any loan funding, though by the time the notes and deeds of trust are run through the securitization process they are unsecured as a matter of law. The fact is that the notes were rendered non-negotiable because of the way they were pooled into Real Estate Mortgage Investment Conduits (REMICs), the MBS Pool Trusts, which by law are not permitted to own any assets, and by the way mortgage payments and funds from other sources passed through the REMIC, not with payments on any individual note being applied to the funder of the particular loan, but by payment first to the top tranche and then downward, regardless of which tranche contained the note upon which said payment was made. This rendered all the notes non-negotiable, there being no holder in due course. The process and its aftermath also rendered the notes unsecured. The geniuses on Wall Street who masterminded such ironic results may or may not have foreseen these legal effects of their creations, but this was irrelevant to them inasmuch as their money had already been made and secreted away.

Suits can be brought against any and all intermediate participants, based on theories such as joint venture, common purpose, aiding and abetting, and RICO. It is likely that the true party-in-interest is responsible for numerous violations of State and Federal Law that could subject it to serious financial and other liabilities that exceed the face value of the note. This may well be the reason true parties-in-interest do not appear in these cases. If they did, it would amount to an admission that it is the holder in due course in a consumer real estate transaction, which would make it liable for the actions of all prior holders of the note and other causes of action, such as malfeasance performed by agents of the true party-in-interest and those of its predecessors.

Even if the true party-in-interest were to be joined in this case and the proofs required as set forth herein were provided, Debtor asks that the action be tolled pending the results of his investigation and analysis and complete and full responses to discovery have been received, as well as additional time for the investigative report to be completed and time to prepare or amend his adversary complaint or complaints.

Even if Movant can prove it is the party entitled to proceed, that it has a valid security interest and that the obligation has not been discharged, it may not do so if it is in violation of the statutory duties and obligations it contractually bound itself to perform when it struck its agreement with the Department of the Treasury (of which the Debtor is a third party beneficiary) as a condition for acceptance of government bailout funds pursuant to the Troubled Asset Relief Program ("TARP" or "TARP Funds") and/or otherwise.

Debtor is investigating the amendment (or new filing) of an adversary proceeding alleging various causes of action, which may include a quiet title action. Possible causes of action include: Failure to Join Indispensable Parties; Standing; Reconveyance; Payment; Offset; Failure to Record --- Condition Precedent; Rescission; Reconveyance; Slander of Title; Breach of Fiduciary Duty; Fraud in the Inducement; Fraud in the Execution; Negligence; Negligent Supervision; Appraisal Error or Fraud; Unconscionable Predatory Lending Practices; Unjust Enrichment; Identity Theft; Deceptive Practices; False Advertising; Securities Fraud; Constructive Trust on Profits; Breach of Privacy, as well as statutory causes of action under the following federal statutes, HOEPA; RESPA; TILA; RICO. (END OF DECLARATION)

44. This Motion is being filed in good faith based on Federal and State legal grounds for relief and not for any purpose of delay.

45. Under the circumstances where the Movant in this action may not have (and may never have had) actual legal standing to bring the foreclosure in the first instance and may in fact not be the true or real party-in-interest at all, no bond should be required as a prerequisite to this Court's granting of a stay.

**RELIEF REQUESTED**

For the foregoing reasons and for cause shown, Debtor respectfully requests that this Court

1) allow discovery, admit evidence, and set an evidentiary hearing in the matter, and

2) grant a stay of foreclosure proceedings until the matter has been heard, and

3) deny Movant's motion for relief from the automatic stay, with prejudice, and

4) investigate whether Movant and Movant's counsel engaged in a fraudulent pattern of conduct, resulting in fraud upon the Court, fraud upon the Debtor and fraud upon the Investor, the real party-in-interest, and

5) any other relief that the Court deems just and proper.

**NOTICE**

No trustee or examiner has been appointed in this Chapter 11 Case. Debtor has provided notice of this Motion to: (a) the United States Trustee; (b) counsel to Movant; (c) any party-in-interest that has requested notice pursuant to Rule 2002 of the Federal Rules. In light of the nature of the relief requested, Debtor submits that no further notice is required.

**WHEREFORE**, Debtor asks that this Court grant the relief requested and require the real

party-in-interest to appear as a party to this proceeding, to present strict proof that it is the real party-in-interest, or has full and sufficient authority to act on behalf of the real party-in-interest, as well as proof of all required elements as set forth above, with strict application of the Rules of Evidence, including proof of the amount, if any, of Debtor's obligation that remains undischarged, and based upon the extraordinary circumstances in today's economy, dismiss the motion or stay further action pending responses to discovery requests granting Debtor an opportunity to amend his adversary complaint or file a new complaint when the information is obtained by Debtor, and for such other and further relief as is just. Debtor reserves the right to assert additional defenses and rights as they arise.

Respectfully submitted this 5th day of April, 2010.

_____
Andrew C. Bailey, Debtor in Pro Per

**Certificate of Notice**

Copy of the foregoing was mailed on April 5th, 2010 to:

U.S. Trustee
Office of the US Trustee
230 N. First Avenue, Suite 204,
Phoenix, AZ 85003

Larry Lee Watson
Office of the US Trustee
230 N. First Avenue, Suite 204,
Phoenix, AZ 85003

Jennifer A. Giaimo
Office of the US Trustee
230 N. First Avenue, Suite 204,
Phoenix, AZ 85003

Leonard McDonald, Esq
Tiffany & Bosco, PA
2525 East Camelback Road, Suite 300
Phoenix, Arizona 85016

Dean Prober, Esq
Polk, Prober & Raphael
PO Box 4365
Woodland Hills, CA  91365-4365

Ronald Horwitz, Esq
Janessa Koenig
Jaberg & Wilk, PC
3200 N. Central Avenue, suite 2000
Phoenix AZ 85012

Kyle Hirsch, Esq
Bryan Cave, LLP
Two North Central Ave. Suite 2200
Phoenix, AZ 85004

TIFFANY & BOSCO, P.A.
Michael A. Bosco, Jr.
2525 East Camelback Road, Suite 300
Phoenix, Arizona 85016

0152325825/0152325825
Title No: 288648
FHA/VA No.:

NTS    4257664

# NOTICE OF TRUSTEE'S SALE
## File ID. #08-46763  Bailey

Notice is hereby given that **Michael A. Bosco, Jr., Attorney at Law**, as trustee (or successor trustee, or substituted trustee), pursuant to the Deed of Trust which had an original balance of **$640,000.00** executed by **Andrew C. Bailey and Constance Baxter Marlow, 2500 Page Springs, Cornville, AZ 86325**, dated **June 9, 2006** and recorded **June 23, 2006**, as Instrument No./Docket-Page **4409-655** of Official Records in the office of the County Recorder of **Yavapai** County, State of Arizona, will sell the real property described herein by public auction on **November 18, 2008 at 11:00 AM, on the front steps of the Old Yavapai County Courthouse, facing Gurley Street, Prescott, AZ,** to the highest bidder for cash (in the forms which are lawful tender in the United States and acceptable to the Trustee, payable in accordance with ARS 33-811A), all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and more fully described as:

Parcel I: A portion of the Southeast quarter of Section 15, Township 16 North, Range 4 East of the Gila and Salt River Base and Meridian, Yavapai County, Arizona, more particularly described as follows: COMMENCING at the Southeast corner of said Section 15; THENCE North 89°57'49" West along the Southerly boundary of said Section 15, a distance of 495.31 feet to the Westerly right of way line of the Page Springs Road and the TRUE POINT OF BEGINNING; THENCE continuing North 89°57'49" West, a distance of 414.11 feet; THENCE North 12°47'43" West, a distance of 293.12 feet; THENCE South 89°57'49" East, a distance of 292.28 feet to a point on the Westerly right of way line of the Page Springs Road; THENCE Southeasterly, along said right of way line on a curve to the left, having a radius of 749.00 feet, through a central angle of 15°51'22", a distance of 207.33 feet; THENCE South 37°56'23" East, along said right of way, a distance of 135.61 feet to the TRUE POINT OF BEGINNING.

PARCEL II:  AN EASEMENT for ingress and egress described as follows: COMMENCING at the Southeast corner of said Section 15; THENCE North 89°57'49" West, along the Southerly boundary of said Section 15, a distance of 1303.17 feet; THENCE North 07°17'21" East, a distance of 288.10 feet; THENCE South 89°57'49" East, a distance of 272.98 feet to the TRUE POINT OF BEGINNING; THENCE North 39°02'54" East, 356.01 feet; THENCE South 89°57'49" East, a distance of 31.21 feet; THENCE South 03°33'23" East, a distance of 30.06 feet; THENCE North 89°57'49" West, a distance of 18.79 feet; THENCE South 39°02'54" West, a distance of 317.40 feet; THENCE North 89°57'49" West, a distance of 38.60 feet to the TRUE POINT OF BEGINNING of said Access Easements.

Exhibit: A

**2500 Page Springs**
**Cornville, AZ  86325**
**Tax Parcel No.: 407-27-018**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

*(Notice of Sale continued following page .........)*

The beneficiary under the aforementioned Deed of Trust has accelerated the Note secured thereby and has declared the entire unpaid principal balance, as well as any and all other amounts due in connection with said Note and/or Deed of Trust, immediately due and payable.

Said sale will be made in an "as is" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided therein, and the unpaid principal balance of the Note secured by said Deed of Trust with interest thereon as proved in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

Current Beneficiary:
    Lehman Brothers Bank, FSB
Care of / Servicer
    Wells Fargo Bank, N.A. successor by merger with Wells Fargo Home Mortgage, Inc.
    Attn: F/C Dept.
    3476 Stateview Boulevard
    Fort Mill, SC  29715

Current Trustee:
Michael A. Bosco, Jr.
2525 East Camelback Road, Suite 300
Phoenix, Arizona 85016
(602) 255-6000

Dated : August 14, 2008

_____

Michael A. Bosco, Jr., Attorney at Law
Trustee/Successor Trustee, is qualified per
ARS Section 33-803 (A)2 as a member of
The Arizona State Bar

STATE OF ARIZONA)
             ) ss.
County of Maricopa   )

This instrument was acknowledged before me on 08/14/08, by MICHAEL A. BOSCO, JR., Attorney at Law, as Trustee/Successor Trustee.

My Commission Expires:

OFFICIAL SEAL
ANN ARMSTRONG
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Jan. 15, 2010

Ann Armstrong, Notary Public
Commission expiration is 1/15/2010 12:00:00 AM

NOTICE:  This proceeding is an effort collect a debt on behalf of the beneficiary under the referenced Deed of Trust. Any information obtained will be used for that purpose. Unless the loan is reinstated, this Trustee's Sale proceedings will result in foreclosure of the subject property.

Michael A. Bosco, Jr.
2525 East Camelback Road, Suite 300
Phoenix, AZ 85016

$1

$14.04

## ASSIGNMENT OF DEED OF TRUST

T & B No.: 08-46763

Loan No. 0152325825
Parcel No.

For Value Received, the undersigned corporation hereby grants, assigns and transfers to **Lehman Brothers Bank, FSB** at the address of c/o ASC, 3476 Stateview Blvd, Fort Mill, SC 29715 all beneficial interest under that certain Deed of Trust dated **June 9, 2006** executed by **Andrew C. Bailey and Constance Baxter Marlow** Trustor, **First American Title Insurance Company** Trustee, **Wells Fargo Bank, N.A.**, as Beneficiary; and recorded on **June 23, 2006** as Instrument No./Docket-Page No. 4409-655 of Official Records of **Yavapai** County, AZ and legally describing the trust property as:

**Parcel I:** A portion of the Southeast quarter of Section 15, Township 16 North, Range 4 East of the Gila and Salt River Base and Meridian, Yavapai County, Arizona, more particularly described as follows: COMMENCING at the Southeast corner of said Section 15; THENCE North 89°57'49" West along the Southerly boundary of said Section 15, a distance of 495.31 feet to the Westerly right of way line of the Page Springs Road and the TRUE POINT OF BEGINNING; THENCE continuing North 89°57'49" West, a distance of 414.11 feet; THENCE North 12°47'43" West, a distance of 293. 12 feet; THENCE South 89°57'49" East, a distance of 292.28 feet to a point on the Westerly right of way line of the Page Springs Road; THENCE Southeasterly, along said right of way line on a curve to the left, having a radius of 749.00 feet, through a central angle of 15°51'22", a distance of 207.33 feet; THENCE South 37°56'23" East, along said right of way, a distance of 135.61 feet to the TRUE POINT OF BEGINNING.

**PARCEL II:** AN EASEMENT for ingress and egress described as follows: COMMENCING at the Southeast corner of said Section 15; THENCE North 89°57'49" West, along the Southerly boundary of said Section 15, a distance of 1303.17 feet; THENCE North 07°17'21" East, a distance of 288.10 feet; THENCE South 89°57'49" East, a distance of 272.98 feet to the TRUE POINT OF BEGINNING; THENCE North 39°02'54" East, 356.01 feet; THENCE South 89°57'49" East, a distance of 31.21 feet; THENCE South 03°33'23" East, a distance of 30.06 feet; THENCE North 89°57'49" West, a distance of 18.79 feet; THENCE South 39°02'54" West, a distance of 317.40 feet; THENCE North 89°57'49" West, a distance of 38.60 feet to the TRUE POINT OF BEGINNING of said Access Easements.

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust

Date : August 14, 2008

**Wells Fargo Bank, NA**

By : Mark S. Bosco, Attorney at Law
By Limited Power of Attorney

Exhibit: B

On this 14th day of August, 2008, before me, the undersigned, a Notary Public for said ~~~~, ~~~~
appeared Mark S. Bosco, Attorney at Law known to me to be the By Limited Power of Attorney of the above
corporation, and acknowledge execution of the above instrument on behalf of the corporation.

My Commission Expires:

Notary Public



OFFICIAL SEAL
PAULA GRUNTMEIR
NOTARY PUBLIC    State of Arizona
MARICOPA COUNTY
My Comm. Expires Oct. 23, 2011

SEAL